Appeal No. 23-4364

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

SUMMER NICHOLE MCCROSKEY,

Appellant.

*Appeal from the United States District Court for the
District of Maryland, Northern Division
The Honorable Richard D. Bennett, United States District Judge*

BRIEF OF APPELLEE
UNITED STATES OF AMERICA

**Erek L. Barron
United States Attorney**

**Paul E. Budlow
Colleen E. McGuinn
Assistant United States Attorneys**

**36 South Charles Street, Suite 400
Baltimore, Maryland 21201
(410) 209-4800**

**November 20, 2023**       *Attorneys for Appellee*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF THE ISSUE ..............................................................1

STATEMENT OF THE CASE.................................................................1

    A.    McCroskey's Offenses ............................................................1

        1.  McCroskey, alone, started abusing Jane Doe at age 4 months .......2

        2. McCroskey and Colby started abusing Jane Doe together, and McCroskey continued to produce videos and images of the abuse....................................................................................2

        3. When Jane Doe turned 2 years old, McCroskey's abuse of Jane Doe became more violent, as McCroskey and Colby explicitly discussed and planned the abuse and rape of Jane Doe ...................................3

        4. McCroskey distributed the exploitation of Jane Doe to McCroskey and others on the Dark Web, using an encrypted application .........4

        5.  The videos and defendant's chats show that defendant initiated the abuse, was aware of the physical pain she was inflicting, and planned years of additional abuse of Jane Doe and others ..............4

    B.    McCroskey's History and Characteristics Demonstrate a Sexual Attraction to Children and Prior Exploitation of Infants .....................9

    C.    Law Enforcement's Investigation of McCroskey & Colby ...............10

    D.    Indictment and Guilty Plea...................................................11

    E.    Sentencing ........................................................................11

        a.  Presentence Report.......................................................12

        b.  Defendant's sentencing position ...................................12

c. Government's Sentencing Position ................................................13

d. Sentencing hearing and district court's judgment..........................14

SUMMARY OF ARGUMENT ..............................................................16

ARGUMENT .......................................................................................17

I.    MCCROSKEY'S    SENTENCE    WAS    SUBSTANTIVELY
REASONABLE................................................................................17

A.    Standard of Review ..........................................................17

B.    The Gravity of the Offense and Similar Sentences.............................19

C.    McCroskey's Sentence of 80-Years Was Substantively Reasonable .21

CONCLUSION ....................................................................................29

STATEMENT WITH RESPECT TO ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

## CASES

*Gall v. United States*,
552 U.S. 38 (2007) ................................................................. *passim*

*New York v. Ferber*,
458 U.S. 747 & nn.9-10 (1982) ........................................ 20

*Osborne v. Ohio*,
495 U.S. 103 (1990) .......................................................... 20

*United States v. Paton*,
535 F.3d 829 (8th Cir. 2008) ............................................ 28

*Rita v. United States*,
551 U.S. 338–58 (2007) .................................................... 18

*United States v. Abu Ali*,
528 F.3d 210 (4th Cir. 2008) ....................................... 17, 24

*United States v. Allen*,
491 F.3d 178 (4th Cir. 2007) ............................................ 22

*United States v. Beasley*,
688 F.3d 523 (8th Cir. 2012) ............................................ 26

*United States v. Betcher*,
534 F.3d 820 (8th Cir. 2008) ...................................... 27-28

*United States v. Boulware*,
604 F.3d 832 (4th Cir. 2010) ...................................... 17-18

*United States v. Bynum*,
604 F.3d 161 (4th Cir. 2010) ............................................ 24

*United States v. Cobler*,
748 F.3d 570 (4th Cir. 2014) ............................................ 20

*United States v. Diosdado-Star*,
630 F.3d 359 (4th Cir. 2011) ............................................ 18

iii

*United States v. Dowell*,
    771 F.3d 162 (4th Cir. 2014) ............................................................ 20

*United States v. Ebersbach*,
    489 Fed.Appx. 635 (4th Cir. 2011) ................................................ 21

*United States v. Goodwin, No. 19-30193*,
    2022 WL 135165 (9th Cir. Jan. 13, 2022) (mem.) .......................... 26

*United States v. Gries*,
    877 F.3d 255 (7th Cir. 2017) ............................................................ 27

*United States v. Hargrove*,
    701 F.3d 156–61 (4th Cir. 2012) ...................................................... 21

*United States v. Huffstatler*,
    561 F.3d 694 (7th Cir. 2009) ............................................................ 27

*United States v. Jeffery*,
    631 F.3d 669 (4th Cir. 2011) ............................................................ 22

*United States v. Johnson*,
    451 F.3d 1239 (11th Cir. 2006) .................................................. 26-27

*United States v. Kapordelis*,
    569 F.3d 1291 (11th Cir. 2009)(a) .................................................. 27

*United States v. Martinez*,
    453 Fed.Appx. 342 (4th Cir. 2011) ................................................ 21

*United States v. Mattocks*,
    408 Fed.Appx. 717 (4th Cir. 2011) ................................................ 21

*United States v. Montes-Pineda*,
    445 F.3d 375 (4th Cir. 2006) ............................................................ 24

*United States v. Nance*,
    957 F.3d 204 (4th Cir. 2020) ........................................ 18, 19, 21-22

*United States v. Pauley*,
    511 F.3d 468 (4th Cir. 2007) .................................................... 22, 24

*United States v. Pugh,*
    515 F.3d 1179 (11th Cir. 2008) ........................................................ 28

*United States v. Raplinger,*
    555 F.3d 687 (8th Cir. 2009) .......................................................... 27

*United States v. Ross,*
    72 F.4th 40 (4th Cir. 2023) ............................................................ 21

*United States v. Sarras,*
    575 F.3d 1191 (11th Cir. 2009) ................................................. 19, 26

*United States v. Spencer,*
    848 F.3d 324 (4th Cir. 2017) .......................................................... 22

*United States v. Trejo-Martinez,*
    481 F.3d 409 (6th Cir. 2007) .................................................... 25, 25

*United States v. Vowell,*
    516 F.3d 503 (6th Cir. 2008) .......................................................... 28

*United States v. White,*
    238 F.3d 537 (4th Cir. 2001) .......................................................... 23

*United States v. Wilkinson,*
    706 F. App'x 337 (9th Cir. 2017) (mem.)………………………………….. 26

*United States v. Williams, No. 13-13353*
    2013 WL 6851125 (11th Cir. Dec. 31, 2013)…………………………… 27

## STATUTES

18 U.S.C. § 2251 .............................................................................. 11

18 U.S.C. § 2252 .......................................................................... 11-12

18 U.S.C. § 2252A ............................................................................ 12

18 U.S.C. § 3231 ............................................................................... 1

18 U.S.C. § 3553 ............................................................................. 15

18 U.S.C. § 3742 ............................................................................... 1

28 U.S.C. § 1291 ............................................................................... 1

§ 3553(a) ...................................................................................... 19

**STATEMENT OF JURISDICTION**

Appellant Summer McCroskey pled guilty to multiple offenses arising out of her sexual exploitation of an infant in her care. JA45. Specifically, McCroskey and her co-conspirator engaged in oral, vaginal, and anal penetration of their infant daughter, and produced videos and images of the abuse. JA255. The district court sentenced the defendant to a total term of 80 years' (960 months') imprisonment. JA176-184. The district court (Richard D. Bennett, J.) had jurisdiction over this federal criminal case under 18 U.S.C. § 3231. The defendant filed a timely notice of appeal. JA185. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

**STATEMENT OF THE ISSUE**

Whether Defendant's below Guidelines 80-year prison sentence, followed by a life term of supervised release, for Defendant's sexual exploitation of an infant and distribution and possession of child pornography, was within the discretion of the district court and substantively reasonable.

**STATEMENT OF THE CASE**

A.    **McCroskey's Offenses**

McCroskey and her husband and codefendant Lawrence Aquilla Colby, IV sexually abused Jane Doe starting at approximately 4 months of age through when Jane Doe was 2 years-old and produced videos and images of the abuse. JA255.

1

The abuse included oral, vaginal, and anal penetration, as well as bondage, and both McCroskey and Colby participated in the abuse. JA255. McCroskey also distributed the files to Colby and others using an encrypted messaging application. JA255.

### 1. McCroskey, alone, started abusing Jane Doe at age 4 months

McCroskey and Colby were in a romantic relationship beginning in approximately 2017, married in 2020, and lived together in Cecil County, Maryland. JA255. Jane Doe was born in October 2019. JA255. On January 21, 2020, McCroskey produced a video and images depicting Jane Doe naked, with her genitals exposed in a lascivious manner, while McCroskey slapped Jane Doe's buttocks. JA265.

### 2. McCroskey and Colby started abusing Jane Doe together, and McCroskey continued to produce videos and images of the abuse

In February 2020, McCroskey and Colby produced a video and images that depicted Jane Doe's exposed genitals, and also depicted McCroskey slapping Jane Doe's buttocks while Colby forced his penis in Jane Doe's mouth. JA256.

A month later in March 2020, McCroskey produced videos and images of McCroskey fondling and spitting on Jane Doe's exposed genitals. Later that same month, McCroskey produced videos and images of McCroskey placing her tongue

and finger on Jane Doe's genitals, and also using her finger to penetrate Jane Doe's

anus.  JA256.  Jane Doe was less than 5 months old at the time.

> 3. *When Jane Doe turned 2 years old, McCroskey's abuse of Jane Doe*
> *became more violent, as McCroskey and Colby explicitly discussed*
> *and planned the abuse and  rape of Jane Doe*

In October 2021, on the same day McCroskey produced videos and images of

McCroskey using her hand to fondle Jane Doe's exposed genitals, McCroskey sent

the produced files to Colby with the message:  "That's the cunny I can't wait to help

you rape and watch you molest."  JA256.

Days later, after Colby texted McCroskey that he was thinking about "..dirty

pedo things. Like training [Jane Doe] to be a little fuck toy."  McCroskey responded,

"…I can't wait to watch you molest [Jane Doe] tomorrow morning..." JA256.  The

next day, on October 20, 2021, McCroskey and Colby bound Jane Doe's arms and

legs, and Colby anally raped Jane Doe while McCroskey produced numerous videos

and images of the rape.  JA257.  Days later, McCroskey used an encrypted

application to send the files of their rape of Jane Doe to Colby with the message:

"that's you inside of her."  JA257.  Colby responded, "…I can't wait to rape [Jane

Doe] and cum deep inside her again…" JA257.  Later that day, McCroskey sent the

following message to Colby:  "I just sent the videos to one of my super close pedo

friend. Made him promise not to show anyone. So far he hasn't'. He's pretty cool.

He said you raping her ass was hot." JA257. Colby replied, "Okay. Just make sure you can't see my tattoos or faces or anything in the videos." JA257. McCroskey responded, "That's why I had the camera pointing down. We should definitely make more though…" JA257.

On October 25, 2021, McCroskey and Colby again restrained Jane Doe so that McCroskey could record Colby vaginally and anally rape the two-year-old. JA257. McCroskey produced a video of this conduct initially by using her phone to record the rape through a video baby monitor, and then walked into the room and recorded Colby's rape of Jane Doe in person. JA257. While Jane Doe is screaming, McCroskey stated, "it sounds like she's moaning." JA257.

    4. *McCroskey distributed the exploitation of Jane Doe to McCroskey and others on the Dark Web, using an encrypted application.*

McCroskey produced the videos and images of the abuse her sexual abuse of Jane Doe using her mobile phones and saved the files on her phones. On at least four separate occasions in 2020 and 2021, McCroskey used an encrypted application to distribute many of the files of Jane Doe's abuse to others on the Dark Web, and to Colby. JA257. McCroskey also distributed child pornography other than what she and Colby produced of Jane Doe to Colby in December 2021. JA258.

    5. *The videos and defendant's chats show that defendant initiated the abuse, was aware of the physical pain she was inflicting, and planned years of additional abuse of Jane Doe and others*

As described *supra*, the videos themselves demonstrate that when McCroskey sexually abused Jane Doe, she knew that her acts were causing severe physical and emotional trauma.  In addition to Jane Doe's own screams and resistance depicted in the videos, McCroskey's own words show McCroskey initiated and planned the abuse, and that she planned years of additional abuse of Jane Doe and others.  Jane Doe's pain was clear to McCroskey.  But instead of ending her abuse, McCroskey bound and gagged Jane Doe, and planned to drug her into compliance and silence.

For instance, in a chat with Colby in early October 2021, just prior to the violent escalation of the sexual abuse, McCroskey texted Colby, "Are you thinking about our daughters tiny cunny?  Thinking about how much it would turn you on to be her first rape?  I could always sit on her tiny fuck face while you raped her. Just so she wouldn't cry as loud." JA308.  After McCroskey bound and raped Jane Doe, and recorded the abuse, McCroskey sent the following messages to Colby, "I'm feeling bored asf tbh. Wish you were here so I could suck your fat cock," and "I also came this morning watching you fuck her."  JA310.  McCroskey continued, "So, I still want you to keep doing what you're doing. I was just jealous that she got your cum. That's all."  JA310.  When Colby suggested a break for "the pedo stuff," McCroskey responded, "We can cut a few days off from doing pedo stuff. Give us

5

time. But also keep going," and "like let's do it by weeks. There's a whole week of doing it, and then a whole week of you and me time."  JA311.

In the days following the October 25, 2022, rape where Jane Doe was bound and gagged, McCroskey began discussing her plans to have children in order to sexually abuse them.  Her texts to Colby included the following:

- Thinking about you getting everyone pregnant and then raping those babies

- That's easy.  I can start training [Jane Doe], teaching her with love and backing away when she needs space, just so she knows that it's a safe space and it's okay. Then once I'm pregnant, you can start teaching her gently how to suck your cock, while her trainers are in both holes. She'll learn, slowly. But she'll learn. It would have been way better if we had continued while she was a newborn. Started her from there until now. We could've had a trainer in her holes when she was 3 months old if not sooner. You could've been fucking her this whole time in both holes if we stuck to it.

- I still want you to do things. Because I fear that our hot talk won't be enough and I'll want to push my own limits again and again until there's no going back.

- And yeah, maybe we should've started her out gently and lovingly. Maybe the next baby?… idunno. … But we'd definitely need supplies if we ever deciding to do a home birth with nobody knowing.

- Okay, so. Let's go through my feelings and how I actually feel about this. So, yes. It first started off as a fantasy, but like I said earlier, I push my own limits. And then I get mad at myself for not liking a limit I pushed myself to.

- It does turn me on thinking about it, and actually doing it. It makes me super fucking wet because I'm a pedo, and I know you are too and I know you're enjoying it as much as I am. I've also noticed that I'm always the

6

one to bring up like the real molestation or the rape.

JA312-314.

McCroskey was aware of the physical damage, extreme pain, and emotional

trauma she was inflicting on Jane Doe, as reflected in the following messages:

- The last time we did anything with her, **the night that she bled a lot**, I looked at her. And her face; it was scared but strong. And it broke me a little because I want to rape her with you, but I also want her to enjoy it. Like it's weird I guess. But anyways. I don't truly know if I want it or not, I know it turns me on, and I know I'd rather be horny than any of my other emotions.

- I still get super wet knowing [Jane Doe] squirted all over your fat pedo cock. I keep thinking back and remembering how **she was barely screaming, and stopped fighting so hard**. She was definitely cumming on your cock. 😊  That was the day you were finally able to go all the way inside of her, too. Maybe she got turned on from you hitting a nerve, or maybe it was the thought of not being able to stop it. **Either way, she still remembers, and I think she'll always remember you raping her**. And to me, that's hot asf.  Makes me think maybe it's too late to stop the pedo stuff. Makes me think we should teach her it's normal so we don't get in trouble. All because she remembers how painful your cock is, but also how enjoyable it is too.

JA313-14 (emphasis added).

When the discussion focused on Jane Doe remembering the pain and

disclosing the abuse in the future, McCroskey made the following comments to

Colby:

- We would have to make it pleasurable for her.

- Mhm. So what do you want to do about it? Wait and hope she forgets or

7

keep going?

- Hm. Or we could really be fucked up and we can continue for a few years, rape her cunny, drug her, rape her ass, cum in all her holes, and then when she gets a boyfriend, stop fucking her, and tell her she needs to fuck him instead.

- Thinking about her getting curious and wanting to try to suck your cock without us forcing her. Maybe she'll learn that potty time means daddy's cock time too.

- We could buy her some bondage stuff, ropes, a few different types of gags. Make her look slutty for you, and tie her up gently and put one of the mouth gags in, the one with the hole, and throat rape her and cum down her throat.

- I was going through our telegram messages and I saw the videos and played them, and Charlotte came over to see what the sound was, and she watched herself get raped by her father for an entire 3 mins.

- She just stood there and watched it. She was biting her bottom lip, but I don't think that meant anything. She intently watched.

- I did tell her that it was her being raped by her father….and that was hot…I'm sorry

JA315-17.

On December 23, 2021, McCroskey *encouraged* Colby to rape Charlotte on

Christmas Day:

- You can always start thinking about it. Thinking about molesting Charlotte again. Trying to rape her cunny. Cumming inside of your 2 year old daughter again.

- Wouldn't it be so hot to rape her on Christmas Day and cum in her ass and send her over to your moms?

8

- Fuck. I want you to think about forcing yourself inside of her cunny.

- Think about how easy her ass opened up for your cock. Maybe her cunny will do the same. I'll know if you're raping her cunny if I hear her crying. I'll just touch myself while you rape her and cum in her. I love when you lose control and rape her.

- I'll even put the lube in her room for you.

JA318.   The government argued that the offense conduct alone, without consideration of McCroskey's documented prior exploitation of other infants, called for a life-equivalent sentence.  JA319.

### B.      McCroskey's History and Characteristics Demonstrate a Sexual Attraction to Children and Prior Exploitation of Infants

The record also contained significant evidence of McCroskey's sexual attraction to infants.  In 2017, while pregnant with a daughter, McCroskey sent messages to then her then boyfriend revealing her interest in incest, sexual attraction to infants, and desire to sexually abuse the child after she was born.  JA270, 302-306.  McCroskey and the boyfriend discussed their mutual plans to abuse the baby.  JA270, 302-306.  McCroskey told him:

- The thought of our daughter being around 1-2 and playing with her, even with my finger or the head of your cock rubbing against her clit, would be real hot.  JA303.

- I actually want you to take our daughters virginity… Could you do that?..'' JA303.

- I want it all to happen.  I wanna watch your cock sliding against her little

9

clit when she's super young.  I want to watch you cum on her clit and I'll shove it inside of her at a young age.  I want to walk in on you basically molesting our daughter and just watching as you do what you want… We might not wait for [the child] to be 1-2.  Maybe around 7-8 months.  I can't wait.  JA304.

Equally disturbing, during the chats with the father, McCroskey discussed her prior abuse of *another infant*:

- I haven't really done anything incest other than my daughter.  And she was like 8 months old.  I've done quite a lot of bestiality stuff… JA302;

- I've rubbed my daughter's clit, I've let my daughter taste my cum.  That's pretty much it… I think.  JA302;

- All I've really done is play with her clit.. she's licked my clit once and touched my clit and I've let her taste my cum off my fingers.  I wanted to watch as someone fucked her, or put their cocks in her mouth… but I have never really told anyone.  JA304;

- I use to take pictures of [2016 victim's] pussy and touch myself to the thought of someone cumming inside of her…  Maybe I can take pictures of [unborn child's] pussy and send them when you're in the shower.  Would you like that?  JA305.

After the chats were discovered by family and then California's Child Protective Services, McCroskey's daughter was removed from her care.  JA270.

### C.     <u>Law Enforcement's Investigation of McCroskey & Colby</u>

Starting as early as February 2020, the files of Jane Doe's exploitation and abuse that McCroskey produced and distributed on the Dark Web were observed by undercover law enforcement officers outside of the United States.  JA257.  By

10

December 2021, information connecting the videos to the United States was developed, and on February 11, 2022, the FBI connected the videos to McCroskey's Instagram account, searched her residence, and arrested McCroskey and Colby. JA299.

### D.    Indictment and Guilty Plea

On March 4, 2022, McCroskey was charged by criminal complaint with Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a).  JA255.  On June 21, 2022, a grand jury returned an indictment charging McCroskey with conspiracy to Commit Sexual Exploitation of a Child in violation of 18 U.S.C. § 2251(e) (Count One); 8 counts of Sexual Exploitation of a Child in violation of 18 U.S.C. § 2251(a) (Counts, Two, Three, Five, Seven, Eight, Nine, and Ten); 5 counts of Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) (Counts Eleven, Twelve, Thirteen, Fifteen and Seventeen); and 3 counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Counts Nineteen, Twenty and Twenty-One).  JA255.

On February 2, 2023, without of a plea agreement, McCroskey pled guilty to all counts in the Indictment in which she was charged.  JA255.

### E.    Sentencing

### a.  Presentence Report

The Presentence Report calculated McCroskey's offense level to be 58—fifteen levels higher than the highest offense level in the Sentencing Table—but in the "rare instances" where a defendant's total offense level exceeds 43, the Guidelines require the offense level to be treated as a level 43.  JA265.  It calculated the defendant's criminal history category to be I.  JA266.  The corresponding Guidelines imprisonment range was life.  JA272.  Because the statutory sentences did not include a possibility of a life sentence, the guideline term of imprisonment was 4,800 months, or 400 years.  JA 272.  The Probation Officer recommended the Guidelines sentence of 4,800 months to provide just punishment and protect the public.  She emphasized the seriousness McCroskey's conduct producing and distributing files of the abuse of an infant in her care to strangers, and the fact that the defendant continued the "cycle of victimization," and that she also possessed and distributed pornography of other young victims.  JA279.

### b.  Defendant's sentencing position

McCroskey asked for the mandatory-minimum 15-year sentence.  JA138, 289.  McCroskey cited her age, her difficult childhood, her (largely unsubstantiated) allegations of being the victim of repeated sexual abuse, and her claimed remorse.  JA138-143, 284-294.  McCroskey also argued that her abuse of Jane Doe was in part

a product of the "manipulation, emotional abuse, and physical abuse" by Colby. JA288-289, 159.

c. <u>Government's sentencing position</u>

The government sought a sentence of 230 years, the maximum penalty for all charges, in order to protect the community from McCroskey, provide just punishment, and deter other like-minded individuals from harming more children. JA296-330.  The government pointed to defendant's egregious abuse of trust by exploiting an infant in her care; her abuse of Jane Doe alone (without Colby); her instigation and encouragement of the escalating violent abuse, including the rape, restraint, and gagging of Jane Doe; her acceptance and enjoyment of her own sexual attraction to infants; the instances of McCroskey pushing Colby to continue to abuse of Jane Doe even when he expressed hesitance; McCroskey's awareness – and apparent enjoyment – of the pain and emotional distress of Jane Doe; McCroskey's disturbing plans to continue the rape and exploitation of Jane Doe for years, McCroskey's plans to give birth to additional children to sexually abuse; and the lifelong harm inflicted by McCroskey's extremely depraved conduct.  JA306, 307, 311, 319, 326.  The government also argued that McCroskey magnified the harm to Jane Doe by sharing and distributing the images and videos of Jane Doe on the Dark Web, where they will exist forever.  JA297, 322.  The government pointed to

13

McCroskey's prior sexual abuse and planned sexual abuse of infants in her care, which led to her daughter being removed from her care in 2017. JA-300-306. The government pointed out that after abusing one child and having the second taken away, she repeatedly sexually abused Jane Doe for her own sexual gratification, recorded and distributed the abuse. The government therefore argued that a life-equivalent sentence was necessary to protect the public, specifically vulnerable minors, from McCroskey. JA323.

> d. <u>Sentencing hearing and district court's judgment.</u>

During the hearing, the government argued that defendant knew that she was hurting Jane Doe when she screamed in pain, yet she continued to abuse her and plan future abuse of Jane Doe and other yet-unborn children. JA559-61. The government argued that any mitigation relating to the defendant's difficult childhood was far outweighed by the not only the nature of her abuse of Jane Doe, but also the length of the abuse, and the risk of harming children in the future presented by McCroskey. JA559. The government also observed that the defendant's claims of prior sexual abuse were largely not documented, in any event did not excuse her behavior, and on the contrary, her own experience should have made more empathetic to children, not less. JA560.

During the hearing, defense counsel argued for the minimum sentence, based on McCroskey's age, lack of criminal history, claims of remorse, her difficult childhood, and her claims that she was the victim of sexual abuse as a child. JA571-576.

Before handing down the sentence, the district court confirmed that McCroskey had reviewed the Presentence Report with her attorney "four or five times," and that there were no objections to the report. JA539-540. The district court then determined that final offense score of 43 and a Criminal History category of I resulted in a guidelines range of life imprisonment. JA549.

After hearing from the parties and the defendant, the district court stated that he viewed the videos and images that were subject of the offense conduct with counsel in advance of the sentencing date. JA577. After considering the factors in 18 U.S.C. § 3553(a), the district court sentenced defendant to 80 years' imprisonment. The court observed that in his many years as a prosecutor, defense attorney, and judge, the defendant's conduct was "just absolutely the most horrific thing I have ever heard," that it was "depraved," and that "it just shocks the conscience." JA577. McCroskey's conduct was worse than abusing or even murdering a child, and that "the Court has to provide the discipline to give it structure in terms of how does society deal with something like this." JA577. The district

15

court "conducted a very careful analysis," and determined that a life-equivalent sentence was appropriate. JA578. The district court considered McCroskey's difficult childhood, and determined that 80 years' imprisonment was the appropriate sentence in order to protect the public from McCroskey:

> I recognize [] you life has been an almost continuous series of trauma … and I certainly acknowledge and recognized the abuse which you appear to have suffered as a child , … but I've considered you to be a threat to the community and I believe that you are in a rare category of serial child molester and you do represent a threat to the community and you shall be treated as such.

JA584-85. The district court repeated that in imposing the life-equivalent sentence, it had reviewed McCroskey's history of abuse and victimization, and had listened to counsel's arguments, and was nevertheless still persuaded that the sentence was appropriate. JA592. When given the opportunity to request the district court to further address the defendant's mitigation, counsel declined. JA592.

## SUMMARY OF ARGUMENT

Defendant's below-guidelines, 80-year sentence, is well within the discretion of the district court to impose an appropriate sentence. Defendant's horrific sexual abuse of Jane Doe, from age 4 months through 2 years, and her distribution of videos and images of that abuse, caused significant emotional and physical harm that continues to this day. The videos themselves and Defendant's chats with her codefendant demonstrate that she was aware of the harm and pain she was causing,

16

yet she continued the abuse anyway, while simultaneously planning future abuse of Jane Doe, and the similar future abuse of her yet-unborn children.  The defendant committed this horrific conduct after previous instances of sexual abuse on another daughter.    Applying the § 3553(a) factors, all these facts amply justified a life-equivalent sentence.  The sentence is therefore substantively reasonable.  This Court should affirm.

## ARGUMENT

## I.    MCCROSKEY'S  SENTENCE WAS SUBSTANTIVELY REASONABLE.

### A.    <u>Standard of Review</u>

Because a district court's sentencing discretion is "sizable," *United States v. Abu Ali*, 528 F.3d 210, 266 (4th Cir. 2008), appellate review is limited to determining whether a sentence is "reasonable."  *United States v. Boulware*, 604 F.3d 832, 837 (4th Cir. 2010).  Accordingly, this Court evaluates challenges to the reasonableness of a sentence under a deferential abuse-of-discretion standard, "regardless of 'whether [the sentence] is inside, just outside, or significantly outside the Guidelines range.'"  *United States v. Nance*, 957 F.3d 204, 212 (4th Cir. 2020) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007), *cert. denied*, 2020 WL 6385951 (Nov. 2, 2020)).  This deference reflects that a sentencing judge "has access to, and greater familiar with, the individual case and the individual defendant before him than the

[Sentencing] Commission or the appeals court." *Rita v. United States*, 551 U.S. 338, 357–58 (2007); *accord United States v. Diosdado-Star*, 630 F.3d 359, 366 (4th Cir. 2011) (observing that sentencing judge "'is in a superior position to find facts and judge their import'" and "'gains insights not conveyed by the record'" (quoting *Gall*, 552 U.S. at 51)).

Defendant correctly does not allege procedural error: The district court correctly calculated the Guidelines, JA549; it heard argument from both parties, JA550, 571; it gave McCroskey herself an opportunity to speak, JA576; it said that the Guidelines were not mandatory, JA543; it said that it did not presume the Guidelines to be reasonable, JA544; it walked through several § 3553(a) factors, JA577-85, 592; and it aptly explained the sentence, including why it was sentencing below the Guidelines, JA577-78, 592. Nothing more was required. So, the only issue on appeal is whether the sentence was substantively reasonable.

In assessing *substantive* reasonableness, the Guidelines are the "starting point," and a Guidelines sentence "will usually be reasonable," even when the sentence is for life or effectively for life. *Rita v. United States*, 551 U.S. 338, 351 (2007). This Court then considers the "totality of the circumstances" to determine "whether the sentencing court abused its discretion in concluding that the sentence

18

it chose satisfied the standards set forth in § 3553(a)." *United States v. Nance*, 957 F.3d 204, 212 (4th Cir. 2020).

### B.    The Gravity of the Offense and Similar Sentences

"Child sex crimes are among the most egregious and despicable of societal and criminal offenses...." *United States v. Sarras,* 575 F.3d 1191, 1220 (11th Cir. 2009).   Congress, courts, and scholars all recognize and acknowledge that child pornography crimes have at their core a demand for the sexual exploitation and abuse of children.   Regarding the gravity of the offense at issue, there can be no question that the creation and dissemination of child pornography is a serious crime that causes real injury to particularly vulnerable victims.   And it is most obvious that in the production of child pornography children are seriously harmed – physically, emotionally, and mentally – and that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse. *See New York v. Ferber,* 458 U.S. 747, 757-59 & nn.9-10 (1982) (citing congressional and scholarly reports, and court cases).   The distribution of child pornography feeds an industry that causes physiological, emotional, and mental trauma to the child victims.   *See Osborne v. Ohio,* 495 U.S. 103, 109 (1990). Possession, receipt, distribution, and production of child pornography are significant

19

crimes because such crimes threaten grave harm to our society and its most vulnerable citizens.

Consistent with that view, this Court has repeatedly found life equivalent sentences to be substantively reasonable. In *United States v. Dowell*, 771 F.3d 162, 169 (4th Cir. 2014), the defendant, who had no prior criminal record, pleaded guilty to twelve counts of production of child pornography and one count of transportation of child pornography, and was sentenced to 960 months.[1] Emphasizing the harm caused by exploitation and molestation of a young child, this Court held that the defendant's 960-month sentence was substantively reasonable. Similarly, in *United States v. Cobler*, 748 F.3d 570, 580 (4th Cir. 2014), this Court held that the defendant's sentence of 120 years for the sexual abuse and production of child pornography of a 4 year old boy was substantively reasonable. In *Cobler*, the defendant complained on appeal that the district court abused its discretion by relying on a single sentencing factor – deterrence – particularly in light of the defendant's mitigation (health, age, life expectancy). *See also United States v. Mattocks,* 408 Fed.Appx. 717 (4th Cir. 2011) (unpublished) (affirming 600-month sentence for one count of production of child pornography involving a 6-year old

---

[1] Although the trial court in *Dowell* accurately described the defendant's offenses as "heinous," the conduct did not approach the level of violence and depravity exhibited by McCroskey here.

child and one count of transportation of child pornography); *United States v. Ebersbach,* 489 Fed.Appx. 635 (4th Cir. 2011) (unpublished) (affirming 360-month Guidelines sentence); *United States v. Martinez,* 453 Fed.Appx. 342 (4th Cir. 2011) (unpublished) (affirming of denial of motion to withdraw guilty plea in case where defendant received 960-month sentence), *cert. denied,* 132 S. Ct. 1130 (2012).[2]

### C.    McCroskey's Sentence of 80-Years Was Substantively Reasonable

Substantive reasonableness review examines "the totality of the circumstances" to determine whether the court acted within its discretion "in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *United States v. Hargrove*, 701 F.3d 156, 160–61 (4th Cir. 2012); *accord Nance*, 957 F.3d at 215 (observing that such discretion is "extremely broad" (quoting *United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011). "Because district courts are 'in a superior position to find facts and judge their import,' all sentencing decisions— 'whether inside, just outside, or significantly outside the Guidelines range'—are entitled to 'due deference.'" *United States v. Spencer*, 848 F.3d 324, 327 (4th Cir. 2017) (quoting *Gall*, 552 U.S. at 41, 51). Moreover, a sentence that falls within a

---

[2] In a recent published decision, this Court also held that long prison sentences, functionally equivalent to "life," for individuals who molested children and produced child pornography, do not support an inference of gross disproportionality and therefore do not violate the 8th Amendment. *United States v. Ross*, 72 F.4th 40, 52 (4th Cir. 2023) (600 month sentence for production of child pornography).

properly calculated Guidelines range is presumptively reasonable. *United States v. Allen*, 491 F.3d 178, 193 (4th Cir. 2007).

McCroskey argues that the court imposed a substantively unreasonable sentence because, according to McCroskey, the trial court placed improper emphasis on its assessment of the nature and her offense.  Br. of Appellant at 17.  But McCroskey fails to mention that the trial court relied extensively on its finding of McCroskey's future dangerousness, and the need to protect the public from her future crimes.  JA585.  Furthermore, the fact that the trial court strongly emphasized the nature of the offense, McCroskey's future dangerousness, and the need to protect the public as a sentencing factor does not render the sentence unreasonable.  *See United States v. Pauley,* 511 F.3d 468, 476 (4th Cir. 2007).  A district court may choose to give great weight to *a single sentencing factor*, such as deterring the defendant from committing future crimes.  *See, e.g., United States v. Pauley,* 511 F.3d 468, 476 (4th Cir. 2007) ("In *Gall,* the Supreme Court held it 'quite reasonabl[e]' for the sentencing court to have 'attached great weight' to a single factor.") (citing *Gall,* 552 U.S. at 59).

In the present case, McCroskey faced a combined maximum statutory penalty of 4,800 months, or 420 years.  *See* JA549.  McCroskey also faced an advisory guideline range of life, corresponding to a Criminal History Category of I, and a total

22

offense level of 43.[3]  United States Sentencing Guidelines, *Sentencing Table;* JA265. McCroskey's advisory guideline range was therefore properly calculated at life, reduced by the Probation Officer to 4,800 months, the total of the combined statutory maximum penalties for the counts of conviction, JA265, which was then reduced by the district court to 960 months as set forth above.  McCroskey did not object to the court's ultimate conclusions regarding the applicable guideline range (i.e., life).

As set forth above, the district court imposed a custodial term of 960 months by imposing the sentences for some counts consecutively, as permitted by U.S.S.G. § 5G1.2(b) and (d).  JA193-94; *United States v. White,* 238 F.3d 537 (4th Cir. 2001). McCroskey fails to provide any basis for concluding her sentence is not reasonable. Moreover, because McCroskey's 80-year sentence does not exceed her advisory guideline range, the sentence is entitled to a presumption of reasonableness on appeal.  *Abu Ali,* 528 F.3d at 261; *United States v. Bynum,* 604 F.3d 161, 168-69 (4th Cir. 2010).  Further, "[e]ven if [this Court] would have reached a different sentencing result on [its] own, this fact alone is 'insufficient to justify reversal of the district court.'"  *Pauley,* 511 F.3d at 474 (quoting *Gall,* 552 U.S. at 51). "[A] defendant can only rebut the presumption [of reasonableness] by demonstrating that the sentence

---

[3] Although McCroskey's offense level scored 58 (well above 43), Level 43 is the maximum level allowed.  *See* U.S.S.G. Ch. 5, Pt. A, cmt. n.2., JA265.

is unreasonable when measured against the § 3553(a) factors." *United States v. Montes-Pineda,* 445 F.3d 375, 379 (4th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied, 551* U.S. 1163 (2007).

There is no basis for concluding that the district court did not perform its duty to consider the requisite factors. Indeed, the record shows the district court accorded full opportunity to both McCroskey and the United States to address the factors material to the sentence, and the parties availed themselves of that opportunity. JA592. The sentencing transcript is over 160 pages long and includes arguments from each party, and McCroskey's own allocution. Only after the district court heard extensive argument did the district court provide an appropriate sentence with thoughtful reasoning. Given the wealth of information provided to the district court, the zealous representation by McCroskey's counsel, and the careful analysis and consideration by the district court, McCroskey has failed to rebut the presumption or show that the district court abused its discretion in choosing a below-guidelines sentence of 80 years.

To the extent that McCroskey contests the district court's decision to deny her request for a lower sentence, this is insufficient to overcome the presumption of reasonableness. *See United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007). The district court in the present case did not select the sentence arbitrarily,

base the sentence on impermissible factors, fail to consider pertinent section 3553(a) factors, or give an unreasonable amount of weight to any pertinent factor. As the Sixth Circuit has observed, in these circumstances, "[t]he mere fact that [a defendant] desired a more lenient sentence, without more, is insufficient to justify our disturbing the reasoned judgment of the district court." *Trejo-Martinez*, 481 F.3d at 413. This is because it is not the province of the appellate court to substitute its judgment for that of the sentencing court. *See Gall*, 552 U.S. at 51 (the fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court).

Moreover, the Guidelines understandably result in lengthy advisory sentences for defendants like McCroskey, because their crimes have directly harmed children, and in conjunction with the prescribed goals of sentencing, lengthy sentences simultaneously punish, deter, and protect. The district court was unequivocal in its remarks that this case demanded a life sentence, and as set forth herein, the district court clearly considered facts supporting the § 3553(a) factors before determining that a sentence of 960 months was appropriate.

Further, in sentencing McCroskey to a sentence of imprisonment of 960 months, the district court did not create any unwarranted disparity. In fact, courts have, in many instances, imposed lengthy, or effectively life sentences for

production of child pornography. For example, in addition to the cases from this Court cited *supra*, in *Sarras*, 575 F.3d 1219–21, the Eleventh Circuit affirmed as reasonable a 100-year (1,200 months) sentence for a first-time offender who sexually abused a 13-year-old girl and produced pornographic images of the victim. Similarly, numerous other circuits have upheld lengthy sentences as substantively reasonable in child exploitation cases. *See United States v. Goodwin*, No. 19-30193, 2022 WL 135165, at *3 (9th Cir. Jan. 13, 2022) (mem.) (upholding 100-year sentence for defendant convicted of sexual exploitation of a child and child-pornography possession and transportation); *United States v. Wilkinson*, 706 F. App'x 337, 340 (9th Cir. 2017) (mem.) (upholding 130-year sentence for defendant convicted of sexual exploitation of a child and child-pornography possession); *United States v. Beasley*, 688 F.3d 523, 536-37 (8th Cir. 2012) (upholding 290-year sentence for producer of child pornography); *United States v. Johnson,* 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding as reasonable a 140-year sentence for abusing and photographing three boys between the ages of 8 and 16 based on consecutive statutory maximums under 18 U.S.C. § 2251(e) and § 2252A(b)(1)); *United States v. Williams,* No. 13-13353 2013 WL 6851125, *2 (11th Cir. Dec. 31, 2013) (unpublished)(fact that 100-year sentence was less than 110-year statutory maximum is indicative of its reasonableness); *United States v. Kapordelis,* 569 F.3d

1291, 1318-19 (11th Cir. 2009) (upholding as reasonable a 420-month sentence, which represented an upward variance from the 262-327-month advisory guidelines range and included 240-month sentences on counts charging production of child pornography under § 2251 (a) and 180-month consecutive sentences on counts charging receipt of child pornography under § 2252A(a)(2)(A)); *See United States v. Gries*, 877 F.3d 255, 257, 261 (7th Cir. 2017) (upholding life sentence for defendant who engaged in child-exploitation enterprise); *United States v. Huffstatler,* 561 F.3d 694, 698 (7th Cir. 2009) (upholding as reasonable an above-guidelines, 450-month sentence for producing pornographic pictures of a 14-year-old boy); *United States v. Raplinger,* 555 F.3d 687, 695 (8th Cir. 2009) (upholding as reasonable a 457-month sentence for photographing and having sexual intercourse with a 15-year-old girl), *cert. denied,* 129 S. Ct. 2814 (2009); *United States v. Betcher,* 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters), *cert. denied,* 555 U.S. 1123 (2009); *United States v. Vowell,* 516 F.3d 503, 511-13 (6th Cir. 2008) (upholding as reasonable a 780-month sentence for a 40-year-old man who had sexual intercourse with his girlfriend's 8-year-old daughter while being videotaped by his girlfriend); *see also United States v. Paton,* 535 F.3d 829, at 837-38 (8th Cir. 2008) (concluding

27

that life sentence for five counts of production of child pornography was not cruel and unusual punishment in violation of the Eighth Amendment); *United States v. Pugh,* 515 F.3d 1179, 1202 (11th Cir. 2008) ("[W]e have typically treated child sex offenses as serious crimes, upholding severe sentences in these cases").

       i.   *The district court appropriately weighed the depravity of defendant's conduct, her indifference to Jane Doe's suffering, her plans to continue to abuse on Jane Doe and others, her distribution of the files to others, and the impact of the defendant's crimes on the victim, in imposing a life sentence.*

In sentencing McCroskey, the court conducted a thorough, individualized assessment of the offense, and as conceded by McCroskey on appeal, the trial court considered McCroskey's history and characteristics in light of the § 3553(a) factors. Br. of Appellant at 17, JA584-85, 592. The trial court recognized that the horrific nature of the offense—which involved the repeated violent abuse of an infant, the recording the abuse and distributing the files on the Dark Web, the explicit plans to continue the abuse of Jane Doe and others—required a sentence sufficiently lengthy to account for the seriousness of the offense and the need to deter others from similar crimes. The trial court also determined, based on the facts before it, that McCroskey was a serial child molester and represented a threat to the community. JA584-85.

In doing so, the district court properly determined that McCroskey is simply too dangerous to ever be released from prison. Her past molestations, her depraved

and extensive sexual abuse of Jane Doe, her trafficking of child pornography, and her unremitting persistence to continue preying on the most vulnerable children place her in a category all her own. When looking at the impact of McCroskey's criminal conduct, as well as her probable future criminal conduct, the district court correctly recognized the danger McCroskey presents to society, particularly children, and acted well within its discretion to sentence the defendant to 80 years' imprisonment.

## CONCLUSION

For the reasons set forth above, this Court should affirm the judgment of the district court.

Respectfully submitted,

Erek L. Barron
United States Attorney

_____/s/_____

By:  Paul E. Budlow
Colleen E. McGuinn
Assistant United States Attorneys

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

The United States respectfully submits that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

**CERTIFICATE OF COMPLIANCE**

1.    This brief has been prepared using:

**Microsoft Word, Times New Roman, 14 Point**

2.    EXCLUSIVE of the corporate disclosure statement; table of contents; table of

citations; statement with respect to oral argument; any addendum containing

statutes, rules, or regulations, and the certificate of service, the brief contains

6,684 words.

I understand that a material misrepresentation can result in the Court's striking

the brief and imposing sanctions.  If the Court so directs, I will provide an electronic

version of the brief and/or a copy of the word or line print-out.


_____/s/_____
Paul E. Budlow
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 20, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Jonathan D. Byrne
> Appellate Counsel
> Office of the Federal Public Defender
> Room 3400, United States Courthouse
> 300 Virginia Street East
> Charleston, West Virginia 25301

_____/s/_____
Paul E. Budlow
Assistant United States Attorney